UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

CRAIG CUNNINGHAM,

     Plaintiff,

v.

AMBER FLORIO, LAW OFFICES OF AMBER
FLORIO, PLLC, GLOBAL CLIENT
SOLUTIONS, LLC, COMMONWEALTH
SERVICING GROUP, LLC, MONMOUTH
MARKETING GROUP, LLC, TOM MORAN,
DMB FINANCIAL, LLC, HAL BROWDER,
MATTHEW GUTHRIE,

     Defendants.

_____/

CASE NO.: 4:17-cv-00839-ALM-CAN

Hon. Amos L. Mazzant, III

Hon. Christine A. Nowak

**ORAL ARGUMENT REQUESTED**

**DEFENDANT GLOBAL CLIENT SOLUTIONS, LLC'S MOTION
TO DISMISS COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

SHEEHY, WARE & PAPPAS, P.C.
Joseph A. Garnett
Texas Bar No. 07680600
Federal ID No. 8307
909 Fannin Street
Suite 2500
Houston, Texas 77010
Phone:  713-951-1016
Fax:  713-951-1199
jgarnett@sheehyware.com

GREENSPOON MARDER LLP
Richard W. Epstein (Lead Attorney)
(*pro hac vice* application forthcoming)
Fla. Bar No. 229091
Jeffrey A. Backman
(*pro hac vice* application forthcoming)
Fla. Bar No. 662501
Roy Taub
(*pro hac vice* application forthcoming)
Fla. Bar No. 116263
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
954.491.1120 (Telephone)
954.343.6958 (Facsimile)
richard.epstein@gmlaw.com
jeffrey.backman@gmlaw.com
roy.taub@gmlaw.com

*Attorneys for Defendant Global Client Solutions, LLC*

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendant Global Client Solutions, LLC ("Global"), by and through undersigned counsel, moves this Court to dismiss Plaintiff Craig Cunningham's Complaint for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Plaintiff commenced this action *pro se* on December 7, 2017, when he filed his initial complaint – curiously, titled "Plaintiff's Amended Complaint" – against Global and eight other Defendants, namely Amber Florio, Law Offices of Amber Florio, PLLC, Commonwealth Servicing Group, LLC, Monmouth Marketing Group, LLC, Tom Moran, DMB Financial, LLC, Hal Browder, and Matthew Guthrie.  (*See* Ex. A).  Five days later, on December 12, 2017, Plaintiff filed his amended complaint – more curiously, titled "Plaintiff's Corrected Original Complaint."  (*See* Ex. B) (hereinafter the "Complaint").  There are only three changes in the Complaint:  (1) the caption correctly refers to this Court, not the United States District Court for the Middle District of Tennessee; (2) Plaintiff's allegation that he resides in Nashville (Davidson County), Tennessee is replaced with an allegation that he has a mailing address in Plano, Texas; and (3) in the signature block, Plaintiff struck out his address in Nashville, Tennessee and handwrote the mailing address in Plano, Texas (retaining his Tennessee telephone number). Otherwise, the Complaint is the same as its predecessor.

Plaintiff alleges that in 2016 he "received multiple automated phone calls to [his] cell phone," which has a Tennessee telephone number, "from a variety of phone numbers," "between 50 and 200 calls," "but each and every call had a familiar 'Heather with card service' pre-recorded message and were [sic] selling debt relief services." (Compl. at ¶¶ 13 & 19).  Plaintiff alleges that he "was able to identify Amber Florio and the Law Offices of Amber Florio as one

[sic] of the liable parties in this case," not because of anything stated during one of the 50 to 200 alleged telephone calls, but "through a representation agreement that was sent via email to the Plaintiff in October 2016." (*Id.* at ¶ 14). Plaintiff further alleges that the "representation agreement also discloses that the services of Global Client Solutions, LLC were being sold as a result of the illegal telemarketing calls in the representation agreement and thus each and every call was by or on behalf of Global Client Solutions, LLC." (*Id.*). Moreover, Plaintiff claims that "[a]ccording to the representation agreement and fee schedule, there were various monthly charges that Global Client Solutions, LLC would charge the Plaintiff for services, including a monthly service charge of $10.75 and an ACH fee of $2.00." (*Id.* at ¶ 15).

Plaintiff alleges that, through the telephone calls, each of the Defendants violated various provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA") regarding the use of an automatic telephone dialing systems ("ATDS") and a pre-recorded message, as well as failure to maintain a do not call list and to train agents on the use of it. Plaintiff also alleges that, by placing the alleged "automated" telephone calls to him, Global and each of the other Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"), apparently 15 U.S.C. §§ 1692e and 1692g. Plaintiff seeks, among other things, statutory damages of $3000 for each phone call under the TCPA and $1000 in statutory damages under the FDCPA and, despite appearing *pro se*, attorney's fees.

## STATEMENT OF THE ISSUES TO BE DECIDED

(1)     Fed. R. Civ. P. 12(b)(2):  Whether or not this Court can exercise personal jurisdiction over Global for the claims asserted in the Complaint.

(2)     Fed. R. Civ. P. 12(b)(6):  Whether or not the Complaint states a plausible claim for relief against Global under the TCPA or FDCPA.

## PRELIMINARY STATEMENT

This is one of the dozens of lawsuits filed from Tennessee by serial *pro se* Plaintiff Craig Cunningham across the country seeking statutory damages for alleged violations of the TCPA and the FDCPA.  Plaintiff lumps Global – an Oklahoma limited liability company – together with eight other named Defendants (from various parts of the country) and alleges in wholly conclusory fashion that they are all debt collectors involved in telephone calls to him (apparently in Tennessee) that he claims violated the TCPA and FDCPA.

The Complaint's conclusory allegations raise significantly more questions than they attempt to answer.  Does the Complaint allege any conduct by Global whatsoever?  How is it involved in the alleged scheme involving eight other Defendants?  All Plaintiff alleges with respect to Global is that someone other than Global – one of the other Defendants – emailed a "representation agreement" to Plaintiff, and that document merely identified Global as a processor of transactions for accounts to be established in connection with whatever debt settlement/relief services were allegedly marketed to Plaintiff.  But Plaintiff never alleges those services were ever disclosed during the telephone calls or that he ever made use of them.  How does that reference to Global plausibly connect Global to any alleged TCPA or FDCPA violation?

As to the purported violations, what is Plaintiff's basis to believe the telephone calls were placed by or on behalf of Global – as opposed to any of the other eight Defendants – or that they even impermissibly used an ATDS or pre-recorded message?  Plaintiff's conclusory assertion is not enough.  Was Plaintiff's telephone number even on the national "Do Not Call" registry?  There is no such allegation.  And how do the telephone calls furnish the basis of any FDCPA violation?  What was false or misleading, and how did Global have anything to do with that?  What facts support Plaintiff's conclusion that Global and each of the other Defendants is a "debt

collector" for purposes of the FDCPA?   What is the Plaintiff's basis for alleging the calls attempted to collect a debt and that Global falsely represented its name?   There is simply nothing in the Complaint that qualifies as stating a viable claim against Global.

And how does the Court have personal jurisdiction over Global?   Global is an Oklahoma limited liability company with its principal place of business in Oklahoma.   It does not have the systematic or continuous jurisdictional contacts with Texas required to permit general jurisdiction.   Nor does Plaintiff provide even a *prima facie* basis for specific personal jurisdiction, as he alleges no conduct whatsoever by Global directed toward him.   Even if he had, Plaintiff is a resident of Tennessee, not Texas, and has a Tennessee telephone number, so no conduct directed toward Texas could even be alleged.

At every turn, from the asserted jurisdictional basis to the causes of action, the Complaint is deficient as a matter of law.   For the reasons detailed below, Plaintiff has not come close to establishing any basis for personal jurisdiction over Global or for stating a single plausible cause of action against Global.   The Court should therefore dismiss Plaintiff's Complaint.

## STATEMENT OF FACTS

Global is a limited liability company organized under the laws of the State of Oklahoma, with its principal place of business located in Tulsa, Oklahoma.   (Declaration of Brent Hampton at ¶ 3 & Ex. A thereto).   As recognized by the federal government, Global provides "account management and transaction processing services relating to special purpose bank accounts that clients of debt settlement companies use."   Federal Trade Commission, *Telemarketing Sales Rule*, 75 Fed. Reg. 48458, 48490 n.445 (Aug. 10, 2010).   Global has no systematic or continuous jurisdictional contacts with the State of Texas such that it could be deemed essentially at home in Texas.   (Hampton Decl. at ¶¶ 3-6).   Nor did Global control, direct, or authorize any person to make the telephone calls described in the Complaint or any other telephone calls with an auto-

dialer, pre-recorded message, or for purposes of debt collection activities.  (*Id*. at ¶¶ 7-9).

## ARGUMENT

## I      THE CLAIMS AGAINST GLOBAL SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

### A.      Plaintiff's Burden and the Applicable Standard

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)). If "the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson*, 20 F.3d at 648)).  In responding to a motion to dismiss, "the plaintiff cannot stand on its pleadings, but must, through affidavits or otherwise, set forth specific facts demonstrating that the Court has jurisdiction." *Quilling v. Stark*, No. 3:05-CV-1976-L, 2006 WL 1683442, *3 (N.D. Tex. June 19, 2006) (quoting *Earle v. Aramark Corp.*, No. 3-03-CV-2960-K, 2004 WL 1879884, *2 (N.D. Tex. Aug. 16, 2004)). Although the court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts," it "is not obligated to credit conclusory allegations, even if uncontroverted." *Breathwit Marine Contractors, Ltd. v. Deloach Marine Servs., LLC*, 994 F. Supp. 2d 845, 848 (S.D. Tex. 2014) (citations omitted).  *See also*, *e.g.*, *Dahlstrom v. Dawkins*, No. 4:15-CV-384-ALM-CAN, 2015 WL 9647521, *2 (E.D. Tex. Nov. 20, 2015) (Nowak, M.J.), *report and recommendation adopted*, 2016 WL 69905 (E.D. Tex. Jan. 6, 2016).

With few exceptions not applicable here, "the district court's personal jurisdiction is coterminous with that of a court of general jurisdiction of the state in which the district court sits." *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 673 (S.D. Tex. 2014) (citing *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 418 (5th Cir. 2001)).  Courts in Texas may exercise personal jurisdiction over a nonresident if "(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *DeJoria v. Maghreb Petroleum Expl., S.A.*, 804 F.3d 373, 388 (5th Cir. 2015) (citing *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013)).  Texas's long-arm statute extends to the limits of federal constitutional due process, so the analysis collapses into a due process analysis. *See Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013).  Thus, "[a]sserting personal jurisdiction comports with due process when (1) the nonresident defendant has minimum contacts with the forum state, and (2) asserting jurisdiction complies with traditional notions of fair play and substantial justice." *DeJoria*, 804 F.3d at 388.

A defendant establishes minimum contacts with a state when he purposefully avails himself "of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (citations omitted). The "due process requirements . . . 'must be met as to each defendant over whom a . . . court exercises jurisdiction.'" *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002) (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).

### B.    This Court Does Not Have General Personal Jurisdiction over Global

General personal jurisdiction exists if a defendant's contacts arise from continuous, systematic, and substantial presence in the forum state. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 415 (1984); *Companion Prop. and Cas. Ins. Co. v. Palermo*, 723 F.3d

557, 559 (5th Cir. 2013).  The Supreme Court has clarified that to establish general personal jurisdiction over a corporate entity such as Global, its "affiliations with the State [must be] so 'continuous and systematic' as to render [it] essentially at home in the forum State,'" akin to the "paradigm bases for general jurisdiction" of a corporation's place of incorporation or principal place of business.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 760-61 (2013) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

Nothing in the Complaint suggests Global has the continuous and systematic contacts required for general personal jurisdiction, nor could it.  Global was organized under the laws of the State of Oklahoma and its principal place of business is Tulsa, Oklahoma.  As made clear in the accompanying Declaration of Brent Hampton, Global lacks the continuous and systematic jurisdictional contacts with the State of Texas to render it "essentially at home" there. (Hampton Decl. at ¶¶ 3-6).  Accordingly, there is no basis for the Court to find a *prima facie* showing of general jurisdiction over Global.  *Cf. Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 683 (S.D. Tex. 2014).

### C.      Nor Is There Specific Personal Jurisdiction over Global

Specific jurisdiction over Global is also lacking.  Specific jurisdiction requires that a defendant purposefully directed its activities at the State of Texas, and that Plaintiff's claimed injury arose from those same activities.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471 (1985).  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State."  *Burger King*, 471 U.S. at 474-75.  Thus, to show minimum contacts, the plaintiff is required to point to "*an action of the defendant* purposefully directed toward the forum State."  *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112 (1987) (emphasis added).  *See also Vanderbilt Mortg. and Fin., Inc. v. Flores,* 692 F.3d 358, 375 (5th Cir. 2012) (setting forth the analytical framework).

Plaintiff states no facts against Global, nor can he, that can result in a finding of specific personal jurisdiction over Global in the State of Texas.

It is black letter law that the **"'minimum contacts' necessary to create specific jurisdiction . . . . must arise out of contacts that the 'defendant himself' creates with the forum State."** *Walden v. Fiore*, 134 S. Ct. 1115, 1122-23 (U.S. 2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis added).  The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."  *Id*. (collecting cases). Here, Plaintiff alleges merely that information about Global's services was provided to him by another Defendant in connection with their alleged solicitation of debt relief services.  (Compl. at ¶¶ 14-15).  As Plaintiff alleges no conduct by Global whatsoever, he alleges ***no*** contacts between Global and Texas.

Nor could there be any cognizable contacts with respect to Global between Texas and Plaintiff's claims for purposes of specific personal jurisdiction.  Plaintiff is not a Texas resident. Mr. Cunningham, a prolific serial plaintiff who has filed 62 lawsuits in the United States District Court for the Middle District of Tennessee alone, admits that he was a resident of Nashville, Tennessee "at all times relevant to this complaint."  (Ex. A at ¶ 1).  Plaintiff revised this (and only this) allegation in the Complaint to no longer allege his residency, and instead of his residential address in Tennessee, he provides a mailing address in Plano, Texas.  (*See* Compl. at ¶ 1).  That address corresponds to "The Mailing Point," a "packing, shipping, printing and business services" firm.  *See* http://www.mailingpoint.com.[1]  Even with this change, there is no dispute that Plaintiff is a Tennessee resident with a Tennessee telephone number, and thus no

---

[1] Global requests that the Court take judicial notice of the address and description of The Mailing Point on the cited website as said facts are either generally known in the District or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  *Accord* Fed. R. Evid. 201(b).

conduct regarding telephone calls or other communications directed at him could have been directed to, or be jurisdictionally relevant to, Texas.  *Cf. Rinky Dink, Inc. v. Elec. Merch*. Sys., Inc., No. C13-01347-JCC, 2014 WL 12103245, *3 (W.D. Wash. Nov. 4, 2014) (finding "knowledge that Washington area codes were being called suffices to establish a prima facie case for personal jurisdiction").  *See also Lowe v. CVS Pharmacy, Inc*., 233 F. Supp. 3d 636, 645 (N.D. Ill. 2017) (making similar ruling with respect to Illinois area code and collecting cases).

While Plaintiff alleges, without any stated basis, that "[p]ersonal jurisdiction is apparent as the defendants are making calls to the state of Texas for the purpose of soliciting Texas residents for debt relief," (Compl. at ¶ 12), none of those purported calls could have affected **him** given his Tennessee residency.  Any jurisdictional contacts that may have been created with respect to other persons that, unlike Plaintiff, are in Texas, fail to provide the requisite link for specific personal jurisdiction, at least for Global, between **Plaintiff's** claims and conduct directed at Texas.  The Supreme Court specifically rejected such an approach in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1781 (U.S. 2017), explaining:

> The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents— does not allow the State to assert specific jurisdiction over the nonresidents' claims. As we have explained, "a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction."   *Walden*, [134 S.Ct. at 1123]. This remains true even when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents. . . . What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.

*See also Spratley v. FCA US LLC*, No. 317CV0062MADDEP, 2017 WL 4023348, *7 (N.D.N.Y. Sept. 12, 2017) ("Similarly, in this case, the out-of-state Plaintiffs have shown no connection between their claims and Chrysler's contacts with New York.  Therefore, the Court lacks specific

jurisdiction over the out-of-state Plaintiffs' claims.").

Second, Plaintiff does not allege any conduct **by Global** directed at Texas.  He does not even allege that Global was mentioned in any of the telephone calls that underlie his TCPA and FDCPA claims.  The most that Plaintiff alleges is that in an agreement form that he received regarding another Defendant, Global was identified as the third-party processor of transactions to be used with ACH accounts established in connection with debt settlement services, provided Plaintiff agreed to use that Defendant's services.  (*See* Compl. at ¶¶ 14-15).  From that scant "connection" Plaintiff somehow concludes, "thus each and every call was by or on behalf of Global Client Solutions, LLC."  (*Id.* at ¶ 14).

Plaintiff simply states no facts that would provide this Court a non-speculative basis to accept that conclusion or to otherwise impute any other Defendant's jurisdictional contacts with Texas to Global.  While, "[f]or purposes of personal jurisdiction, the actions of an agent may be attributed to the principal," "[a]n agency relationship cannot be presumed to exist."  *Flores v. A.C., Inc.*, No. EP-02-CA-0200-DB, 2003 WL 1566507, *7 (W.D. Tex. Mar. 5, 2003).  *See also Alfaro-Huitron v. WKI Outsourcing Sols., LLC*, No. EP-14-CV-00159-FM, 2015 WL 1040464, *7 (W.D. Tex. Mar. 10, 2015) ("In order for the court's personal jurisdiction over WKI to be imputed to Defendants, a principal-agent relationship must be established between the parties.  Such a relationship cannot be presumed to exist, but must be established.").  All that Plaintiff offers is his conclusory and implausible assertion that, because Global's account management and transaction processing services were intended by others to be used for any account created in connection with the debt relief services allegedly offered to Plaintiff, "each and every call was by or on behalf of Global Client Solutions, LLC."  (Compl. at ¶ 14).

Even more implausibly, Plaintiff also alleges the telephone calls at issue "were actually by and on behalf of [Defendants] Commonwealth Servicing Group, LLC and DMB Financial, LLC," (*id.* at ¶ 16), and also, for good measure, Defendant Monmouth Marketing Group, LLC. (*Id.* at ¶ 17).   Plaintiff thus attributes numerous masterminds and apparently several layers of principals and agents to this alleged marketing scheme, without any stated facts to nudge his conclusory assertions to plausibility.   Regardless, only Defendants Amber Florio and Law Offices of Amber Florio, PLLC are alleged to have jurisdictional contacts with Texas, (*id.* at ¶¶ 2-10), but the Complaint lacks any well-pleaded facts stating any involvement by those Defendants with the telephone calls at issue, nor the basis to impute any alleged Texas jurisdictional contacts to Global.   Plaintiff's allegations thus fall far short of what Plaintiff must allege to establish agency jurisdiction or any other jurisdictional basis over Global.

In particular, under both Texas and federal common law,[2] an agency relationship requires that "[t]he alleged principal must have the right to control both the means and the details of the process by which the alleged agent is to accomplish his task."   *Matter of Carolin Paxson Adver., Inc.*, 938 F.2d 595, 598 (5th Cir. 1991).   *See also Penn v. Howe-Baker Engineers, Inc*., 898 F.2d 1096, 1102 (5th Cir. 1990) (discussing federal common law).   In the context of the TCPA, to establish an agency relationship, the alleged principal must have "controlled or had the right to control [the alleged agents] and, more specifically, the manner and means of the [telemarketing] campaign they conducted."   *Thomas v. Taco Bell Corp*., 879 F. Supp. 2d 1079, 1085 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678, 679 (9th Cir. 2014) ("[W]e agree with the district judge's analysis of the evidence under the standard he applied . . . .").   Texas law is similar.   *See Alfaro-*

---

[2] The Federal Communications Commission issued a declaratory ruling that a party who did not make a telephone call "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers," namely the doctrines of formal agency, apparent authority, and ratification. *In re DISH Network LLC*, 28 F.C.C. Rcd. 6574, 6584 (2013).

*Huitron*, 2015 WL 1040464 at *7 ("Texas law does not presume an agency relationship exists solely because a principal has authority to approve the final results of the purported agent's work. . . .  In order to demonstrate an agency relationship between WKI and the two defendants, Plaintiffs must show Lack and Skyline had control over how WKI recruited, not simply who WKI recruited.").

Nothing remotely along these lines is alleged in the Complaint.  Nor could Plaintiff do so with respect to Global.  As averred in the accompanying Hampton Declaration, Global did not control, direct, or authorize any person to make the telephone calls described in the Complaint or any other telephone calls with an auto-dialer, pre-recorded message, or for purposes of debt collection activities.  (Hampton Decl. at ¶¶ 7-9).  Under settled law, unless Plaintiff can contradict this evidence, there is no basis to impute any purported agent's jurisdictional contacts to Global.  *Cf. Dickson Marine Inc. v. Panalpina, Inc*., 179 F.3d 331, 338 (5th Cir. 1999) ("Dickson's argument fails because it cannot demonstrate that Panalpina Gabon exercised control over Air Sea."); *Lemann v. Midwest Recovery Fund*, LLC, No. CV 15-3329, 2015 WL 7306442, *5 (E.D. La. Nov. 19, 2015) (holding that defendant's unrebutted declaration assertion that, *inter alia*, "neither [defendant] directed, authorized, or participated in Collection Agency XYZ's alleged Louisiana actions" required dismissal for lack of personal jurisdiction); *Alfaro-Huitron*, 2015 WL 1040464 at *8 ("Plaintiffs have presented no evidence showing that either Lack or Skyline exercised the level of control over WKI necessary to make WKI its agent.  As Plaintiffs have failed to make a prima facie case WKI was the agent of Lack or Skyline, personal jurisdiction cannot be imputed from WKI to Lack and Skyline.").

### D.    Asserting Personal Jurisdiction over Global Would Violate Due Process

Furthermore, asserting personal jurisdiction over Global under these circumstances would offend due process.  *Burger King*, 471 U.S. at 475.  Due process requires that Global have

sufficient minimum contacts with Texas arising from its conduct and connections with Texas that would cause it to expect to be hauled before the State's courts. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Such contacts must be somewhat substantial, and cannot merely be "random, fortuitous or attenuated." *Burger King*, 471 U.S. at 475.  Nothing in the Complaint suggests exercising jurisdiction over Global under the circumstances of this case would comport with due process.  The only connection that Plaintiff claims to Texas is a mailing address that is not alleged to have received any of the alleged communications (which in any event were allegedly by telephone and e-mail).  As discussed, an out-of-state plaintiff's alleged out-of-state injuries fail as a matter of law to qualify as a substantial jurisdictional contact with the state of Texas for any purpose.  Exercising personal jurisdiction over Global under the conclusory and geographically misplaced allegations would raise acute due process concerns.  Even if one delves further and reads the Complaint quite leniently, it fails to state *any* facts showing that Global purposefully directed any conduct with respect to him, nor any with respect to him specifically directed toward Texas, so as to render the exercise of jurisdiction by a court in Texas regarding Plaintiff's claims reasonable and fair.

## II     THE COMPLAINT FAILS TO STATE A CLAIM AGAINST GLOBAL

### A.     The Applicable Pleading Standards

Dismissal is also required under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  A motion under Rule 12(b)(6) challenges the legal sufficiency of a complaint.  *Grisham v. United States*, 103 F.3d 24, 25-26 (5th Cir. 1997). To satisfy the pleading requirements of Rule 8(a), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556.  A "sheer possibility that the defendant has acted unlawfully" is insufficient, and "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555-56.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* at 557.  A complaint therefore must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action therefore will not suffice. *Twombly*, 550 U.S. at 555.  Similarly, a complaint that articulates "naked assertions devoid of further factual enhancement" is similarly insufficient to satisfy the pleading requirements of Rule 8. *Iqbal*, 556 U.S. at 678.

When examining the merits of a Rule 12(b)(6) motion, the complaint's "well-pleaded" factual allegations are accepted as true and construed most favorably to the plaintiff. *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  Thus, "bare assertions" which "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, must be rejected as "conclusory and [are] not entitled to be assumed true." *Id.* at 681 (quoting *Twombly*, 550 U.S. at 555).

### B.      Plaintiff Fails to State a Plausible TCPA Claim

The TCPA claim fails for a host of reasons.  The most fundamental reason why Plaintiff fails to state a single claim against Global is that Plaintiff never alleges any facts plausibly stating that Global had any involvement in the telephone calls at issue.  But even beyond that, the Complaint is devoid of facts sufficient to plausibly state any violation of the TCPA.

### 1.    Plaintiff Fails to Plausibly Allege any Conduct by Global

A party can violate the TCPA by directly placing the telephone call at issue or indirectly for a call placed by its agent.  *See In re DISH Network LLC*, 28 F.C.C. Rcd. 6574, 6584, 6586-87 (2013).  Plaintiff alleges, without any seeming basis, that both were the case with respect to Global in stating that "each and every call was ***by or on behalf*** of [Global]."  (Compl. at ¶ 14) (emphasis added).  This "all of the above" approach underscores the lack of any factual basis for asserting Global had any involvement in the telephone calls.  Plaintiff's blanket allegations of liability fail to satisfy the plausibility standard.

Courts agree that direct liability under the TCPA can exist only against the actual ***"maker"*** of the call at issue, *i.e.*, the party that physically placed or initiated the call.  *See*, *e.g.*, *Ashland Hosp. Corp. v. Serv. Employees Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 742-43 (6th Cir. 2013); *Donaca v. Dish Network, LLC.*, 303 F.R.D. 390, 394, 396 (D. Colo. 2014); *Thomas*, 897 F. Supp. 2d at 1084.  The Complaint lacks ***any*** facts to permit as a plausible inference that Global is the party that physically placed the telephone calls at issue.  Plaintiff offers nothing whatsoever in the form of well-pleaded facts to connect Global to the calls at issue.  No originating telephone number is alleged, let alone shown to be associated with Global, nor is there an allegation that Global's name was even mentioned on the telephone calls at issue.  Nothing in the Complaint renders Plaintiff's allegation that Global made any of the telephone calls anything more than specious or, at best, speculative.  The Northern District of Texas dismissed a TCPA claim filed by Cunningham on these very grounds, and they apply in full force to his claim against Global here:

> the Amended Complaint contains no facts, such as the source of or phone number
> making the calls, indicating that this Defendant is responsible for the calls
> received by Plaintiff. . . .   The Amended Complaint claims "receipt of a recorded
> message made by [D]efendant," but contains no additional facts identifying

> Defendant specifically, such as by a phone number or the contents of the message. . . . Concerning one call, the Amended Complaint states that "no name was given for the entity placing the call and even the agents only stated who they were calling from after the Plaintiff asked repeatedly," but never states that the agents identified the Defendant as the source of that call. . . . Thus, the Court concludes that Plaintiff has failed to plead adequate facts connecting Defendant with the alleged misconduct.

*Cunningham v. TechStorm, LLC*, No. 3:16-CV-2879-M, 2017 WL 721079, *2 (N.D. Tex. Feb. 23, 2017) (internal citations omitted).

Any claim for vicarious liability against Global also fails to be plausibly stated. While a non-initiating party of a telephone call "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers," (*In re DISH Network*, 28 F.C.C. Rcd. at 6584), the Complaint never alludes to, let alone plausibly states, any agency basis for imposing vicarious liability. It is settled that a plaintiff must allege facts supporting *each* of the elements of the agency theory supporting vicarious liability.[3] The Complaint, however, is devoid of any such allegations of fact, and therefore fails to plausibly plead a vicarious liability TCPA claim. *Cf., e.g.*, *Shanghai Hailian Elec. Tools Co. v. Home Depot U.S.A., Inc.*, No. 3:16-CV-1451-D, 2017 WL 4005139, *4 (N.D. Tex. Sept. 12, 2017) (dismissing unjust enrichment claim because the "allegations are insufficient to plausibly plead that Malibu or Brinkmann acted with actual or apparent authority or was otherwise subject to Home Depot's control"). Plaintiff fails to state any plausible connection between Global and the telephone calls claimed to violate the TCPA, and certainly not the type of control required to render plausible his suggestion of agency liability.

---

[3] *See, e.g., Jones v. All Am. Auto Prot., Inc.*, No. 314CV00199LRHWGC, 2015 WL 7566685, *3-5 (D. Nev. Nov. 24, 2015); *Bank v. Philips Electronics N. Am. Corp.*, No. 14-cv-5312 JG VMS, 2015 WL 1650926, *3 (E.D.N.Y. Apr. 14, 2015); *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 138-39 (E.D.N.Y. 2015); *Toney v. Quality Resources, Inc.*, 75 F. Supp. 3d 727, 742-746 (N.D. Ill. 2014); *Lucas v. Telemarketer Calling From (407) 476-5670 & Other Tel. Numbers*, No. 12-CV-630, 2014 WL 1119594, *7 (S.D. Ohio Mar. 20, 2014); *Charvat v. DFS Servs. LLC*, 781 F. Supp. 2d 588, 593 (S.D. Ohio 2011).

### 2.    Count I:  The "Do Not Call" Claim

Count I alleges that Defendants placed telephone calls to Plaintiff's cell phone that "violated the TCPA, 47 USC 227(c)(5) as they failed to maintain a do not call list and train their agents on the use of it."  (Compl. at ¶ 26).  This claim fails at the pleading stage for a host of reasons.

First, Plaintiff never alleges that his cell phone number was registered on the national "Do Not Call" registry and it was called in connection with a telephone solicitation in violation of the TCPA.  "The TCPA imposes liability on callers engaging in telephone solicitations with residential telephone subscribers who register their names on the federal do not call registry." *Morris v. Unitedhealthcare Ins. Co.*, No. 415CV00638ALMCAN, 2016 WL 7115973, *10 (E.D. Tex. Nov. 9, 2016) (citing 47 U.S.C. § 227(c)), *report and recommendation adopted*, No. 4:15-CV-638, 2016 WL 7104091 (E.D. Tex. Dec. 6, 2016).  Thus, in order to state a "do not call" claim under § 227(c)(5)'s private right of action, the plaintiff must allege that he or she "has received more than one telephone call within any 12–month period by or on behalf of the same entity in violation of the [TCPA] regulations."  47 U.S.C. § 227(c)(5).  Here, Plaintiff does not allege that Global (or any Defendant) called a "do not call" registered number belonging to him. In the absence of those essential predicates, Plaintiff fails to state a "do not call" claim under § 227(c)(5).  Even as to his allegation that Global did not maintain a "do not call" list or train its agents, Plaintiff states no facts to make that allegation against Global anything other than speculative.

Second, considering that the Complaint alleges that the telephone calls were all somehow placed on behalf of at least three different Defendants, Plaintiff does not plausibly allege how any of the telephone calls – let alone more than one – could be deemed to have been placed "by

or on behalf of" Global, as opposed to the other Defendants with which it has been lumped together.  47 U.S.C. § 227(c)(5).  Of course, Plaintiff's practice of lumping nine Defendants together fails to provide Global notice of the nature of the claims asserted against it and merits dismissal.  *See, e.g.*, *Paselk v. State*, No. 4:12-CV-754, 2013 WL 4791417, *13 (E.D. Tex. Sept. 5, 2013) (finding plaintiff "failed to plead any discernable or cognizable cause of action against" certain defendants where plaintiff "lumped the DVM Defendants in with various other parties, alleging no facts specific to any party in most cases, and never specific to the DVM Defendants").  The only thing that connects Global to the telephone calls at issue is Plaintiff's conclusory say-so, which is plainly insufficient to plausibly state that more than one telephone call was made "by or on behalf of the same entity."  *See, e.g.*, *Norman v. N. Illinois Gas Co.*, No. 13 CV 3465, 2013 WL 5746329, *3 (N.D. Ill. Oct. 23, 2013); *Worsham v. Nationwide Ins. Co.*, 138 Md. App. 487, 498-99 (Md. Ct. Spec. App. 2001).

### 3.        Count II:  Plaintiff's Claim Under 47 U.S.C. § 227(b)

Plaintiff also claims that Global violated the TCPA because the "telemarketing call[s]" at issue were "automated" telephone calls featuring a "pre-recorded message" made to his cell phone, contrary to 47 U.S.C. § 227(b)'s prohibitions against use of an ATDS or pre-recorded message. [4]  (*See* Compl. at ¶¶ 13, 28).  The Complaint, however, is devoid of facts suggesting it is plausible, rather than simply possible, that, regardless of who called Plaintiff, any of the alleged telephone calls utilized an ATDS or pre-recorded message in violation of the TCPA (as opposed to manually-dialed telephone calls involving live operators, which do not violate the TCPA).

To survive a motion to dismiss for failure to state a claim, Plaintiff cannot merely allege in conclusory terms the use of an ATDS or pre-recorded messages, but must state facts that

---

[4] An ATDS is a statutorily defined term.  It means "equipment which has the capacity" to both "store or produce telephone numbers to be called, using a random or sequential number generator" and "dial such numbers."  47 U.S.C. § 227(a).

render plausible the allegation that such conduct occurred.  His allegations fall far short of establishing plausibility and amount to no more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 1940.  Plaintiff thus has not established the requisite plausibility for his TCPA claim.

The courts overwhelmingly agree that a TCPA plaintiff must plead more than the bare allegation that an ATDS was used or, as here, the more vague allegation that the calls were "automated."[5]  Thus, "even if a plaintiff 'need not plead 'specific technical details' regarding [the defendant's] use of an ATDS. . . they must at least describe, in laymen's terms, the facts about the calls or the circumstances surrounding the calls that make it plausible that they were made using an ATDS.'"  *Kruskall v. Sallie Mae Servs. Inc.*, No. 15-cv-11780, 2016 WL 1056973, *3 (D. Mass. Mar. 14, 2016) (quoting *Baranski*, 2014 WL 1155304 at *6).  Here, Plaintiff fails to describe any aspect of the telephone calls that would support his assertion that the telephone calls were "automated," whatever that means.  Plaintiff simply relies upon a bald, conclusory assertion that does not state a violation of the TCPA, let alone plausibly state the prohibited use of an ATDS.

For the same reason, Plaintiff also fails to state a plausible TCPA claim premised on the

---

[5]  *See, e.g.*, *Williams v. T-Mobile USA, Inc.*, No. 15-CV-03384-JSW, 2015 WL 5962270 (N.D. Cal. Oct. 14, 2015); *Aikens v. Synchrony Financial* No. 15-10058, 2015 WL 5818911, *2-4 (E.D. Mich. July 31, 2015), *report and recommendation adopted*, 2015 WL 5818860 (E.D. Mich. Aug. 31, 2015); *Flores v. Adir Int'l, LLC*, No. CV1500076ABPLAX, 2015 WL 4340020 (C.D. Cal. July 15, 2015); *Gardner v. Credit Mgmt., L.P.*, No. 8:14-CV-1677-T-EAJ, 2015 WL 1235037, *2 (M.D. Fla. Mar. 17, 2015); *Huricks v. Shopkick, Inc.*, No. C-14-2464, 2014 WL 3725344, *2 (N.D. Cal. July 24, 2014); *Padilla v. Whetstone Partners, LLC*, No. 14-21079-CIV, 2014 WL 3418490, *2 (S.D. Fla. July 14, 2014); *Trumper v. GE Capital Retail Bank*, No. 2:14-cv-01211-WJMMF, 2014 WL 7652994 (D.N.J. July 7, 2014); *Baranski v. NCO Fin. Sys., Inc.*, No. 13 CV 6349 ILG JMA, 2014 WL 1155304, *6 (E.D.N.Y. Mar. 21, 2014); *McGinity v. Tracfone Wireless, Inc.*, No. 13-cv-1214, 2014 WL 1202950, *2-3 (M.D. Fla. Mar. 11, 2014); *Emanuel v. Los Angeles Lakers, Inc.*, No. CV 12-9936-GW SHX, 2013 WL 1719035, *4 n.3 (C.D. Cal. Apr. 18, 2013); *Jones v. FMA Alliance Ltd.*, 978 F. Supp. 2d 84, 87 (D. Mass. 2013); *Ibey v. Taco Bell Corp.*, No. 12-CV-0583-H WVG, 2012 WL 2401972 (S.D. Cal. June 18, 2012); *Knutson v. Reply!, Inc.*, No. 10-CV-1267 BEN WMC, 2011 WL 291076 (S.D. Cal. Jan. 27, 2011).

alleged use of a pre-recorded message.  The Fifth Circuit has held that "[t]o be liable under the 'artificial or prerecorded voice' section of the TCPA . . . a defendant must make a call and an artificial or prerecorded voice must actually play."  *Ybarra v. Dish Network, LLC*, 807 F.3d 635, 640 (5th Cir. 2015).  Nowhere does Plaintiff explain why he believes any of the telephone calls he claims to have received utilized a pre-recorded voice.  As with his ATDS accusation, Plaintiff has alleged no facts to support his belief that a recorded message was used.  "Use of an ATDS and the pre-recorded nature of the messages are not legal conclusions, they are facts.  Still, when a fact is itself an element of the claim, as is the case here, it is not sufficient to recite that fact verbatim without other supporting details."  *Johansen v. Vivant, Inc*., No. 12 C 7159, 2012 WL 6590551, *3 (N.D. Ill. Dec. 18, 2012).  Thus, as with allegations of use of an ATDS, the courts have held that "[i]t is not unreasonable . . . to require a plaintiff to describe the phone messages he received in laymen's terms or provide the circumstances surrounding them to establish his belief that the messages were pre-recorded . . . ."  *Id.*[6]  Plaintiff fails this analysis, as he has not alleged any such facts.  Rather, Plaintiff conclusorily alleges that Defendants – all nine of them – placed "automated" calls with a "pre-recorded message."  (Compl. at ¶ 13).

### C.     Plaintiff Fails to State a Plausible FDCPA Claim

Plaintiff also attempts to assert a claim under the FDCPA, alleging that "the purported "multiple breaches by [Defendants] of the TCPA by placing automated calls without an emergency purpose to the Plaintiffs phone" "violated 15 USC 1692(e) and 15 USC 1692(g)." (Compl. at ¶ 30).  Plaintiff is presumably referring to 15 U.S.C. §§ 1692e and 1692g, and other than alleging without any explanation that "Defendants [were] attempting to collect a debt and falsely representing their names" and "Defendants placed multiple harassing calls to the

---

[6] *See also Kruskall*, 2016 WL 1056973 at *3.  *See also, e.g.*, *Reo v. Caribbean Cruise Line, Inc.*, No. 1:14 CV 1374, 2016 WL 1109042, *4 (N.D. Ohio Mar. 18, 2016); *Padilla*, 2014 WL 3418490 at *2; *Moore v. Online Info. Servs., Inc.*, No. 13-61167-CIV, 2014 WL 11696696, *2 (S.D. Fla. Jan. 10, 2014).

Plaintiff," he never explains how either statutory section applies.[7]  Nor does Plaintiff explain how a violation of the TCPA can serve as a predicate for an FDCPA claim.  Not only does Plaintiff fail to allege facts sufficient to render plausible any alleged conduct by Global (in violation of these FDCPA provisions or otherwise), he does not even plausibly allege that Global was a debt collector subject to the FDCPA.

Like with his TCPA claim, Plaintiff's FDCPA claim fails at the outset because he does not make a single allegation of any conduct by Global related to debt collection or otherwise. All that Plaintiff alleges with respect to Global is that Global was proposed to be used as the third-party processor of transactions for ACH accounts established in connection with debt settlement services, provided Plaintiff agreed to use Defendants' services.  (*See* Compl. at ¶¶ 14-15 (alleging the materials provided by e-mail by another Defendant stated Global "would charge Plaintiff for services, including a monthly service charge of $10.75 and an ACH fee of $2.00")).

Not only is none of that conduct by ***Global***, but it does not remotely relate to an attempt by Global to collect from Plaintiff payment of a debt.   Global is not alleged to have communicated or interacted with Plaintiff in any manner, never mind one that violates the FDCPA.   The Complaint is therefore devoid of any allegations of fact (well-pleaded or otherwise) identifying any conduct Global that can be deemed a violation of the FDCPA in any way.  *Cf. Capistrano v. Bank of New York Mellon*, No. 4:16-CV-871-ALM-KPJ, 2017 WL 1758052, *6 (E.D. Tex. Apr. 3, 2017) (recommending dismissal of FDCPA claim where plaintiff failed to "identify any acts or omissions [or] any specific facts demonstrating how those acts violated a provision of the FDCPA"), *report and recommendation adopted*, 2017 WL 1739961

---

[7] 15 U.S.C. § 1692(e) prohibits the use of false or misleading representations by a debt collector.  15 U.S.C. § 1692(g) sets forth various obligations of a debt collector in its initial communication with a debtor regarding verification of the debt and how to respond to a dispute or request for verification of the debt.

(E.D. Tex. May 3, 2017); *Jackson v. Nelnet, Inc.*, No. 4:11-CV-205, 2011 WL 6934446, *3 (E.D. Tex. Dec. 6, 2011) (recommending dismissal of FDCPA claim where "Plaintiff fails to allege any action taken by [Defendant] that could be construed as an attempt to collect a debt."), *report and recommendation adopted*, No. 4:11CV205, 2011 WL 6934451 (E.D. Tex. Dec. 30, 2011).

Nor, even if the Complaint could be deemed to plausibly allege conduct by Global, would Global's conduct be subject to the FDCPA given that Global is not plausibly alleged to be a "debt collector."  The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  To that end, the provisions that Plaintiff attempts to invoke – 15 U.S.C. §§ 1692e and 1692g – apply only to a "debt collector."  *See, e.g., Whatley v. AHF Fin. Servs., LLC*, No. 4:11-CV-488, 2012 WL 5496318, *2 (E.D. Tex. Sept. 17, 2012) (Mazzant, M.J.) ("The FDCPA's provisions generally apply only to 'debt collectors.'"), *report and recommendation adopted*, 2012 WL 5497712 (E.D. Tex. Nov. 13, 2012).  For purposes of the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

Plaintiff conclusorily alleges that "[a]ll of the . . . defendants . . . are also debt collectors as defined by the FDCPA . . . as they are using interstate commerce and they are in the principal purpose of collecting debts due to another, in this case, student loan debt."  (Compl. at ¶ 22). That is nothing more than a bald recitation of a statutory element applied to nine Defendants in one broad brushstroke that cannot be credited by the Court.  *See, e.g., Garcia v. Jenkins/Babb*

*LLP*, No. 3:11-CV-3171-N-BH, 2012 WL 3847362, *7 (N.D. Tex. July 31, 2012) (holding that failure to state facts sufficient to render plausible the assertion that defendant is a "debt collector" "is fatal to the claim . . . under *Iqbal*"), *report and recommendation adopted*, No. 2012 WL 3846539 (N.D. Tex. Sept. 5, 2012); *Verizon Employee Benefits Comm. v. Boyer*, No. 3:06 CV 1539 B, 2007 WL 2258685, *2 (N.D. Tex. July 23, 2007) ("Boyer's conclusory allegation that the Committee is a 'debt collector' is insufficient to withstand the Committee's motion to dismiss.").

Moreover, the term "debt collector" does not include anyone attempting to collect "any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person . . . ." *Id.* at § 1692a(6)(F)(iii).  Plaintiff never alleges that any of the alleged conduct related to a debt in default, which also precludes Plaintiff from plausibly claiming that Global (or any other Defendant, for that matter) is a "debt collector" under the FDCPA.  *Accord Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208, *modified on reh'g on other grounds*, 761 F.2d 237 (5th Cir. 1985).

Finally, to the extent Plaintiff seeks to state an FDCPA claim against Global as a non-debt collector under a vicarious liability theory, as this Court has previously held, that is not cognizable as a matter of law given that the FDCPA applies only to a "debt collector."  *See Whatley*, 2012 WL 5496318 at *3 ("The Court agrees that X–Ray cannot be held vicariously liable to Plaintiff under the FDCPA for actions of its agent.  Therefore, Plaintiff's claim that X–Ray violated the FDCPA should be dismissed.") (Mazzant, M.J.).  *See also*, *e.g.*, *London v. Gums*, No. CIV.A. H-12-3011, 2014 WL 546914, *5 (S.D. Tex. Feb. 10, 2014) ("[A] non-debt collector generally cannot be vicariously liable for a debt collector's FDCPA violations."); *Cangelosi v. New Orleans Hurricane Shutter & Window, L.L.C.*, No. CIV.A. 12-427, 2013 WL

395138, *5 (E.D. La. Jan. 31, 2013) ("As a rule, a non-debt collector cannot be held vicariously liable for the actions of a debt collector.").  There is therefore no basis for Plaintiff's FDCPA claim against Global.

## **CONCLUSION**

As Plaintiff alleges no conduct by Global, and certainly none directed toward him in Texas (as Plaintiff lives in Tennessee), Plaintiff falls far short of providing a basis for the Court to exercise personal jurisdiction over Global.  Global's submissions to the contrary preclude any such showing.  And, in the absence of any well-pleaded allegation of conduct by Global, let alone any basis for believing the telephone calls violated the TCPA, ran afoul of the FDCPA, or that Global is even a debt collector, Plaintiff also fails to state a claim for relief against Global that is plausible.  Accordingly, Global respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice, and award such further relief as this Court deems just and proper.

Dated: January 10, 2018     Respectfully submitted,

SHEEHY, WARE & PAPPAS, P.C.

*/s/ Joseph A. Garnett*
Joseph A. Garnett
Texas Bar No. 07680600
Federal Bar No. 8307
909 Fannin Street
Suite 2500
Houston, Texas 77010
Phone:  713-951-1016
Fax:  713-951-1199
jgarnett@sheehyware.com

GREENSPOON MARDER LLP

Richard W. Epstein (Lead Attorney)
(*pro hac vice* application forthcoming)
Fla. Bar No. 229091
Jeffrey A. Backman

(*pro hac vice* application forthcoming)
Fla. Bar No. 662501
Roy Taub
(*pro hac vice* application forthcoming)
Fla. Bar No. 116263
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
954.491.1120 (Telephone)
954.343.6958 (Facsimile)
richard.epstein@gmlaw.com
jeffrey.backman@gmlaw.com
roy.taub@gmlaw.com

*Attorneys for Defendant*
*Global Client Solutions, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 10, 2018, a true and correct copy of the foregoing was electronically filed with the Clerk of Court by using CM/ECF which will serve copies to all counsel and parties of record registered to receive CM/ECF notification, and that it was served upon any other counsel and parties listed below by e-mail and U.S. first class mail.

### SERVICE LIST

Craig Cunningham
3000 Custer Road, Suite 270-206
Plano, TX 75075
projectpalehorse@hushmail.com

*Plaintiff Pro Se*

*/s/ Joseph A. Garnett*
JOSEPH A. GARNETT